**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ANGELA MICHELLE FREINER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 4:26-cv-00280-RWS |
| | ) | |
| NICOLE S. ZELLWEGER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

Before the Court is self-represented Plaintiff Angela Michelle Freiner's application to proceed in district court without prepaying fees or costs. Based on Plaintiff's financial information, the Court grants her application and waives her filing fee. As Plaintiff is proceeding in forma pauperis, her complaint is subject to the Court's initial review. On initial review under 28 U.S.C. § 1915(e)(2)(B), the Court dismisses this action for failure to state a claim upon which relief may be granted.

**Legal Standard**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous or malicious, or if it fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The Court must "accept as true the facts alleged, but not legal conclusions or threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016); *see also Brown v. Green Tree Serv. LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (court not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that, "if the essence of an allegation is discernible . . . then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). But even pro se complaints must "allege facts, which if true, state a claim as a matter of law." *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone*, 364 F.3d at 914-15 (federal courts not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint").

**Background**

This is the third time Plaintiff has filed a suit in this Court arising out of her child custody proceedings in St. Louis County. Judge Henry Autrey dismissed her first case for failure to comply with a Court order. On Plaintiff's motion to reconsider, he found he lacked of jurisdiction and denied Plaintiff's request to file an amended complaint based on futility. *See Freiner v. Judy*, No. 4:23-cv-00982-HEA (E.D. Mo. filed Aug. 7, 2023), Doc. 9 (*Freiner I*).

Plaintiff refiled her case, this time alleging Defendant the Honorable Mary R. Russell violated her rights under the First and Fourteenth Amendments. *See Freiner v. Russell*, No. 4:23-cv-1279-SRC (E.D. Mo. filed Oct. 10, 2023) (*Freiner II*). Plaintiff asserted that her complaint raised *Monell* claims against Chief Judge Russell based on her failure to properly train Missouri

family court judges. Judge Stephen Clark summarized the background facts underlying Freiner's lawsuits in *Freiner II*. Because this summary includes the factual underpinnings of this suit, the Court quotes it in full:

> Freiner filed her first civil action in this Court on August 7, 2023. *See Freiner v. Judy*, No. 4:23-cv-982-HEA (E.D. Mo. 2023) (*Freiner I*). She sued James Judy, the co-parent of her minor child, asserting that Judy engaged in a pattern of behavior "aimed at undermining [her] relationship with the offspring and causing emotional harm to [her]." Freiner asserted that Judy had "interfered with visitation rights, manipulated the offspring's perception of plaintiff, and intentionally undermined the plaintiff's role as a mother."
>
> Freiner sued defendant Judy under 28 U.S.C. § 1332 diversity jurisdiction, claiming violations of Missouri state law, including: intentional infliction of emotional distress; alienation of her child's affections, including a purported withholding of her child's whereabouts for more than a 10-month period; and violation of her parental rights. She also alleged that Judy made false claims during child custody hearings, forged legal documents relating to those hearings and as such, led to a temporary restraining order being instituted against Freiner by a family court judge in state court and Freiner's eventual incarceration.
>
> . . .
>
> In *Freiner I*, Freiner acknowledged that a trial relating to D.L.'s custody took place in St. Louis County Court on or about August 14, 2020. *See Freiner I*, Doc. 9 at 9-10. She stated that the court awarded custody of D.L. to Judy at that time. However, she complained that she and Judy continued to fight over custodial issues relating to D.L. well into December 2020. *Id.* at 11. Freiner complained that the family court judge denied her motion to amend or modify the Parenting Plan on December 23, 2020. Nonetheless, D.L. refused to return to her father's custody after Christmas break, and she asked to remain in her mother's custody in early January 2021. *Id.* at 12. Judy filed a restraining order seeking to have custody of [D.L.] on or about January 11, 2021, and on January 14, 2021, he sought sole legal and physical custody of D.L.
>
> The state court issued a restraining order on January 14, 2021. The court granted Judy sole legal and physical custody on January 29, 2021, during a preliminary injunction hearing, and ordered Freiner to relinquish custody at the St. Louis County courthouse on February 3, 2021. Freiner claims that D.L. "chose not to attend" that day. *Id.* at 13. On February 5, 2021, the state court issued a show cause order as to Freiner for criminal contempt due to her failure to turn over D.L. and gave Freiner until February 10, 2021, to do so. Freiner contacted Missouri Department of Children and Family Services "on behalf of D.L." on February 9, 2021. The next day, and unnamed person placed D.L. in a "mental ward in St.

> Louis Children's Hospital." *Id.* at 14. The state court appointed two guardians ad litem to D.L. On March 3, 2021, after Freiner went to the news media about the custody case, the judge recused herself from the custody matters. On March 5, 2021, D.L.'s uncle (Judy's brother) transported D.L. to what appears to be her father's custody. *Freiner I*, Doc. 9 at 16.
>
> Freiner was formally indicted on criminal contempt charges on April 21, 2021. She asserted that she lacked any custody over D.L. throughout 2021. However, on May 11, 2022, the court instituted a new Parenting Plan that allows for some "therapeutic virtual contact" between Freiner and D.L. At that time, the court assigned sole legal and physical custody to Judy. *Freiner I*, Doc. 9 at 19. The court eventually dismissed Freiner's criminal case pursuant to "nolle presequi."

Judge Clark dismissed *Freiner II* for lack of subject matter jurisdiction, finding no federal question on its face. *See Freiner II*, Docs. 8-9. This dismissal was summarily affirmed by the Eighth Circuit Court of Appeals. *Id.*, Doc. 16.

Now this case is in its third iteration. Plaintiff has filed a 45-page complaint, and then a 45-page amended complaint, alleging nine separate counts against twelve defendants, including four counts of human trafficking.

**The First Amended Complaint**

Plaintiff brings this 45-page amended complaint alleging violations of the Trafficking Victims Protection Reauthorization Act (Counts I-IV), the First Amendment (Count V), the Fourth Amendment (Counts VI-VII), and Missouri common law (Counts VIII-IX). She names as Defendants the following individuals: Nicole S. Zellweger (Judge, St. Louis County); Tanner Hale (Police Officer); Venus A. Jackson (GAL); BJC Health System; Michael L. Wenzinger, M.D. (Psychiatrist); Alix Weitman, (LCSW); James Scott Judy and Cerissa Patrice Judy (ex-in-laws); David M. Judy (ex-husband); Kathleen E. Shaul (Judy's attorney); Trinity Teen Solutions, Inc.; and Kyle Woodward (employee of Trinity Teen Solutions).

The relevant facts of this action have been summarized largely in *Freiner I* and *II*, quoted above. Despite the length of her amended complaint, only a few additional facts are relevant here.

On February 5, 2021, the state court issued a show cause order as to Freiner for criminal contempt due to her failure to turn over D.L. and gave Freiner until February 10, 2021, to do so. After some communications between opposing counsel and Judge Zellweger regarding the proper procedures for obtaining a body attachment of D.L., if need be, Plaintiff voluntarily transported D.L. to the courthouse for the hearing on February 10, 2021.

## Discussion

### I. Counts I-IV—Trafficking Victims Protection Act

Plaintiff brings Counts I through IV under the Trafficking Victims Protection Act (TVPA), alleging that she was a victim of human trafficking because she was compelled under threat of Court order to transport her daughter, D.L., to the county courthouse for a hearing on February 10, 2021. *See* 18 U.S.C. §§ 1594(a), 1595(a). She alleges BJC and the medical defendants "knew or should have known of" this "confinement-backed courthouse-production" human trafficking conduct, such that they can be found liable for participating in a joint venture.

Section 1589, Forced Labor, states:

> (a) Whoever knowingly provided or obtains the labor or services of a person by any one of, or by any combination of, the following means—
>
> . . .
>
> (3) by means of the abuse or threatened abuse of law or legal process; or
>
> (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint,
>
> Shall be punished as provided under subsection (d).
>
> . . .
>
> (c) In this section:
>
> (1) The term "abuse or threatened abuse of law or legal process" means the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designated, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action.

18 U.S.C. §1589.

Section 1595 provides a private right of action for human trafficking victims to sue their traffickers or those who knowingly benefit from the trafficking. Section 1595(a) states:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a).

"The TVPA is 'an Act to combat trafficking of persons, especially into the sex trade, slavery, and slavery-like conditions, in the United States and countries around the world through prevention, through prosecution and enforcement against traffickers, and through protection and assistance to victims of trafficking.'" *Vaughan v. Aegis Comm. Group, LLC*, 49 F. Supp. 3d 613, 622 (W.D. Mo. 2014) (quoting *Nunag-Tanedo v. E. Baton Rouge Parish Sch. Bd.*, 790 F. Supp. 2d 1134, 1143 (C.D. Cal. 2011)). As to the Act's purpose, courts have stated it is to "'combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children, to ensure just and effective punishment of traffickers.'" *Id.* (quoting *Nunag-Tanedo*, 790 F. Supp. 2d at 1143).

Plaintiff claims she was trafficked because she was forced to transport her daughter to a custody hearing on February 10, 2021, under threat of being held in contempt of court. She states, "The use or threatened use of contempt and confinement as leverage for future performance, together with the proposed use of a judgment-debtor body-attachment form as asserted means for police entry and compelled production, constituted use or threatened use of legal process in a manner or for a purpose for which that process was not designated, within the meaning of § 1589(c)(1)." Doc. 5 at 27.

Plaintiff's alleged trafficking refers to opposing counsel's mistaken understanding that the state court could use a "judgment-debtor body-attachment" form to compel Plaintiff to bring her daughter to the courthouse. Doc. 7 at 5, 8, 27-28. Because this was the wrong form, Plaintiff claims her services were obtained "by means of the abuse or threatened abuse of law or legal process" in violation of § 1589(a)(3), meaning the threatened use of the law "in any manner for which the law was not designated." *See* 18 U.S.C. §§ 1589(a)(3), 1589(c). While the "judgment-debtor body-attachment" form might have been the incorrect form, Plaintiff does not dispute that the state court had the power to compel Plaintiff to bring her daughter to court. A court may employ the traditional remedial enforcement mechanism of incarceration if a parent fails to comply with visitation requirements. *See Freiner II*, Doc. 8 at 9; *see also* Mo. Rev. Stat. § 452.400.6 ("In addition, the court may utilize any and all powers relating to contempt conferred on it by law or rule of the Missouri supreme court").

Opposing counsel's potential use of the supposed wrong form to compel Plaintiff's daughter's attendance at a hearing does not turn this ordinary judicial process into a federal case of human trafficking. Plaintiff has not alleged any Defendant had sufficient criminal intent to engage her in trafficking. The TVPA requires that the perpetrator "knowingly" obtain services by improper means. *See* 18 U.S.C. § 1959(a), (b) (requiring criminal intent of "knowingly"). The Court declines to extend the federal human trafficking statutes so far as to criminalize and provide a private right of action for counsel's reference to an improper legal form. This is especially true where the state court could use legal process to compel Plaintiff to produce her daughter in the child custody hearing. *See* Mo. Rev. Stat. § 452.400.6.

The Court finds Plaintiff has not stated a plausible case that transporting her daughter to court to appear for a mandatory child custody hearing violates her rights under the TVPA. Counts I through IV will be dismissed.

**II. Count V—First Amendment Violations against Judge Zellweger**

In Count V, Plaintiff alleged Judge Zellweger violated her First Amendment rights when the Judge referred Plaintiff's threatening communication to law enforcement. Doc. 5 at 37-38. Plaintiff alleges this action was motivated by Plaintiff's speaking to the media about her case. *Id.*

Judicial immunity provides judges with immunity from suit, allowing them to exercise the authority with which they are vested, and to act upon their own convictions. *See Hamilton v. City of Hayti, Mo.*, 948 F.3d 921, 925 (8th Cir. 2020). "Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). "An act is a judicial act if it is one normally performed by a judge and if the complaining party is dealing with the judge in [her] judicial capacity." *Schottel v. Young*, 687 F.3d 370, 373 (8th Cir. 2012) (quoting *Birch v. Mazander*, 678 F.2d 754, 756 (8th Cir. 1982)).

On March 5, 2021, Plaintiff emailed Judge Zellweger "demand[ing] dissolution of the temporary restraining order and return of her daughter." Doc. 5 at 19. Her email stated, "THE COURT DOES NOT HAVE THE RIGHT TO HOLD MY DAUGHTER AGAINST HER WILL OR TRAFFIC HER ACROSS THE COUNTRY! . . . IF SHE IS NOT RETURNED TO ME TODAY THERE WILL BE CONSEQUENCES FOR YOUR CONDUCT." *Id.* Zellweger forwarded this message to Officer Tanner Hale of the Clayton Police Department. *Id.* at 19-20. Defendant Tanner drafted a probable cause statement to support a warrant charging Plaintiff with tampering with a judicial officer.

Plaintiff seeks to hold Judge Zellweger liable under §1983 for her lawful judicial action of referring Plaintiff's threatening communication to the police. Judge Zellweger's action was a judicial act, normally performed by a judge, and Plaintiff was dealing with Judge Zellweger in her judicial capacity. *See, e.g., Schottel*, 687 F.3d at 373. To the extent Plaintiff asserts Judge Zellweger's recusal from the case renders her acts nonjudicial, Plaintiff is incorrect. *Id.*, *see also Ashford v. Douglas Cnty.*, 2021 WL 2982063, *2 (D. Neb. Jul. 15, 2021) (rejecting plaintiff's contention that judicial immunity is inapplicable when a judge does not use official letterhead to file a judicial complaint). Judge Zellweger's recusal from Plaintiff's case has no bearing on whether her action in forwarding the threatening communication was a judicial act. Even if the Court were to assume Defendant acted maliciously, corruptly, or outside her authority (assumptions not supported by any evidence), she is still immune from Plaintiff's suit. *See, e.g.*, *Ybarra v. Legal Assistance of Dakota Cnty.*, 2025 WL 3215659, *4 (D. Minn. Nov. 18, 2025) (finding state court judge in underlying family court action protected by judicial immunity even assuming truth of alleged malicious activity).

The Court dismisses Plaintiff's allegations against Defendant Zellweger for failure to state a claim upon which relief may be granted.

## III. Counts VI and VII—Violations of Fourth Amendment Against Defendant Hale

In Counts VI and VII, Plaintiff alleges Defendant Officer Hale omitted from his probable cause statement in Plaintiff's judicial tampering case that Judge Zellweger had recused herself from Plaintiff's case. Doc. 5 at 38. Plaintiff states this omission caused Officer Hale's probable cause statement regarding Plaintiff's tampering with a judicial officer to be "materially misleading," violating her Fourth Amendment rights. *Id.* at 39.

"A person commits the offense of tampering with a judicial officer if, with the purpose to harass, intimidate or influence a judicial officer in the performance of such officer's official duties, such person . . . [e]ngages in conduct reasonably calculated to harass or alarm such judicial officer . . . ." Mo. Rev. Stat. § 575.095. A plaintiff challenging a probable cause statement must show "(1) that the police omitted facts with the intent to make, or in the reckless disregard of whether they thereby made, the affidavit misleading; and (2) that the affidavit if supplemented by the omitted information would not have been sufficient to support a finding of probable cause." *Dowell v. Lincoln Cnty.*, 927 F. Supp. 2d 741, 755 (E.D. Mo. 2013).

Plaintiff has not alleged any facts from which the Court could plausibly find that Officer Hale intended to make his probable cause affidavit misleading by omitting the fact of Judge Zellweger's recusal. Plaintiff states, "The incorporated facts support the inference that Hale omitted the recusal knowingly or with reckless disregard for the accuracy and completeness of the probable-cause presentation." Doc. 5 at 39. But Plaintiff has stated no facts that would support the inference that Hale omitted Zellweger's recusal knowingly or recklessly. The Court will not accept as true Plaintiff's legal conclusion. *See Brown v. Green Tree Serv. LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016). Additionally, if Hale's probable cause statement included the fact that Zellweger had recused herself from Plaintiff's case two days before, the probable cause affidavit would have still supported a finding of probable cause that Plaintiff had engaged in judicial tampering.

Plaintiff has not stated a plausible claim that Officer Hale violated her Fourth Amendment rights. Counts VI and VII will be dismissed for failure to state a claim upon which relief may be granted.

## IV. Count VIII and IX—Missouri Common Law

The Court has dismissed all Plaintiff's federal claims, and declines to exercise supplemental jurisdiction over Plaintiff's state law claims for abuse of process and civil conspiracy. The factors of judicial economy, convenience, fairness, and comity point toward declining to exercise jurisdiction over these remaining claims. *See Zubrod v. Hock*, 907 F.3d 568, 580 (8th Cir. 2018). The Court dismisses without prejudice Counts VIII and IX.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's application to proceed in district court without prepaying fees or costs is **GRANTED**. (Doc. 2)

**IT IS FURTHER ORDERED** that Plaintiff's motion for ruling on application to proceed without prepaying fees or costs is **DENIED** as moot. (Doc. 6).

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

An Order of Dismissal will accompany this Memorandum and Order.

Dated this 26th day of August, 2026.

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE